# Lessee of George Moore *against* John Mundorff.

The improver of an island in the Susquehannah, who *caveats* an adverse right in
due time, and immediately after the decision of the Board of Property in his favour,
applies for the island, is protected by the act of 6th March 1793.

EJECTMENT for a small island in the river Susquehannah.

The plaintiff claimed under an application dated 29th May
1794, whereupon an order issued to three persons to view it.
They reported on the 17th November following, that the island
was susceptible of cultivation and valued it at 4l. per acre.

On the 11th December 1794, George Mundorff entered a
*caveat* against the acceptance of Moore's survey, alledging that
he had a valuable improvement on the island, and ought to have
the right of pre-emption.

On the 8th June 1797, Moore made a second application for
the island, asserting it to be then improved and in his posses-
sion : and on the 24th August 1802, John Mundorff, in behalf
of himself *and the other heirs of George Mundorff, en- [*210
tered another *caveat* claiming under an improvement
made ten years before for the purpose of tillage, and asserting

* See the last clause of this 5th section, wherein it is said, they shall pay over to
the treasurer, &c. So also in the 6th, 7th and 9th sections of this act.

that he had many years previously improved the same as a shad fishery, and had applied for a grant of the island at the time of his entry of the first *caveat*, December 11th, 1794.

On the 13th December 1802, the Board of Property decided that the improvement of George Mundorff, being earlier than Moore's, and the former having never relinquished his claim, but filed his *caveat* in December 1794, wherein he claimed by virtue of his improvements, which claim being made within the time limited by the law of 6th March 1793, the *caveat* of George Mundorff, and the claim of George Moore were dismissed.

On the same day, John Mundorff entered a formal application for the island, in behalf of himself and the other heirs of George Mundorff : but this application was not produced in evidence, till the trial was nearly closed.

The chief value of the island consisted in its being a proper place to draw the seine for a shad fishery. Moore in 1795 and 1796 with a party had cleared away some brushes on the island and fished there. He had also a fishery on the eastern shore of the river opposite the premises. But it appeared, that George Mundorff, who lived as a tenant on an adjacent island called Burkholders, about 12 perches distant, had in 1779 and in the succeeding years, done work thereon by digging down the bank as it washed away, and cutting the brush as it grew up, to fit it for a fishery, and had also cleared out the pool, and fished there occasionally with a company who assisted him in the work, and claimed an interest in the fishery. His cattle were driven in and out of the island by his children. In 1790 he had a small pen inclosed of 10 or 12 yards square, in which he cultivated tobacco, and in the three following years, he raised therein Indian corn, turnips and rye, which he afterwards gathered. It was generally known by the name of Mundorff's Island.

After the cause had been fully spoken to by Mr. C. Smith for the plaintiff and Mr. Hopkins for the defendant, the charge to the jury by YEATES, J. was substantially to this effect.

The right set up to this island on each side, is twofold : improvement and application to the land office. As to preparing a pool, or cutting brush to effect a good landing for drawing the seine on an island, it has been objected, that these acts cannot be deemed an improvement which can confer an equitable interest in the land. The position is correct in general ; because the act of 6th March 1793, 3 St. Laws, 310, directing the sale of certain islands in the river Susquehannah, provides in the 5th section, *211]  *that no warrant of survey shall issue for any of the said islands, unless the same is susceptible of cultivation, and therefore the improvements must be made thereupon. But the question may at some time be worth considering, whether when the fitness of an island for the landing place of a fishery, constitutes its chief value, though a very small part of it may be cultivated, the clearing out a contiguous pool and removal of

[Moore's Lessee *v*. Mundorff.]

the obstructions of brush from the landing may not be deemed a species of improvement, as it necessarily enhances the value of the soil ? We give no opinion on this point, as the case does not need it. If the question shall be determined in the affirmative, then the defendant's claim is several years earlier in point of time than the plaintiff's : but if in the negative, they stand on the same footing in this particular, and the plaintiff is bound to shew his superior right, before he can recover. His second application of 1797, calling for his improvement, was misconceived. Old Mundorff actually cultivated the soil of the island by raising tobacco, Indian corn, turnips and rye thereon for four successive years, undisturbed by any one, his little patch being surrounded by a rough inclosure, and did occasional acts of ownership thereon. These acts cost labour, though not a great deal.

The only point to be considered here is, whether the defendant's claim is forfeited for want of an application to the land office in due time.

The law of 6th March 1793, confined the preference to improvers of the Susquehannah islands to the term of two years after the passing of the act ; after which period the right of pre-emption ceased. This term would have expired on the 6th March 1795 ; but the act of 22d September 1794, 3 St. Laws 636, which was made 5 months and 13 days before the end of the two years, suspended the operation of the former act, as to taking up lands without a settlement and improvement thereon. This suspension was not taken off until 23d March 1802, when an act passed for that purpose, so far as related to the islands in the Susquehannah ; add to this last period, 5 months and 13 days, and the term of two years is protracted until the 5th September 1802 ; so that if either the first or the second *caveat* would be considered as applications within the true meaning of the first law of March 1793, they both fall within the term of two years. The first *caveat* was supposed by the defendant to be tantamount to an application, because he recites it as such in the *caveat* filed after his father's death. It is true, no survey could be made on either of the *caveats*, nor could a survey have been made on the application without a warrant ; but the *caveats* were assertions of claim, and in my idea were virtually applications for the island. They negative all idea of abandonment when *set up in opposition to an adverse claim, asserting the right to be in the *caveators*, and persisting in their claim [*212 to a right of pre-emption. On this matter, however, the court were divided in opinion this forenoon. It now appears, that immediately after the decision of the Board of Property, the defendant formally applied at the land office for the island, in behalf of himself and the other heirs of his father. While the controversy subsisted before the board, he was stopped from going on to better his title ; and as to the plaintiff he cannot

be said to have forfeited his pretensions for want of an application. I therefore think the plaintiff is not entitled to recover.

SMITH, J. I feared before the court adjourned this forenoon, there would have been a difference of opinion on the bench. As to the *caveats*, I decidedly am of opinion, they do not amount to applications within the true intentions of the act of 6th March 1793. But on the production of the defendant's application of 13th December 1802, for the island in question, I am clear that the plaintiff is not entitled to recover.

Verdict for the defendant.

## AT A CIRCUIT COURT, HELD AT YORK, APRIL 1805.

### CORAM, YEATES AND SMITH JUSTICES.